UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EKITI G. MESUMBE,            ) | |
|                             ) | |
|          Plaintiff,         ) | |
|                             ) | |
|      v.                     ) | Civil Action No. 09-1582 (GK) |
|                             ) | |
|                             ) | |
| HOWARD UNIVERSITY, <u>et al.</u>,   ) | |
|                             ) | |
|          Defendants.        ) | |
|                             ) | |

<u>MEMORANDUM OPINION</u>

Plaintiff, Ekiti G. Mesumbe ("Plaintiff"), brings this action against Defendants, Howard University, Robert E. Taylor, Sheik N. Hassan, and Irene Pandit (collectively, "Defendants"), under 42 U.S.C. § 1981 and the common law of the District of Columbia. The suit arises from Plaintiff's dismissal from Howard University College of Medicine.

This matter is now before the Court on Defendants' Motion to Dismiss.[1] Upon consideration of the Motion, Opposition, Reply, the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss is **granted.**

_____

[1] In Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition"), he also requests leave to amend the Complaint if his federal claim is dismissed. Pl.'s Opp'n at 3 n.1 [Dkt. No. 7]. The docket does not show that any such motion was actually filed.

## I.  BACKGROUND

### A.    Factual Background[2]

Mesumbe is a Maryland resident and, until recently, was a student at Howard University College of Medicine ("Howard" or the "School").  Compl. ¶ 9 [Dkt. No. 1].  His "national origin is the Republic of Cameroon and his ethnic background and race is West African."  Compl. ¶ 57

#### 1.  Plaintiff's USMLE Step 1 Exam and Third Year of Medical School

Howard students are required to earn a passing score on the United States Medical Licensing Examination ("USMLE") Step 1 in order to enter their third year at the School.  Compl. ¶ 15; Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply"), Ex. A (University and College of Medicine Policies Affecting Students ("University Policies")) at 36 [Dkt. No. 8-2].  Plaintiff failed the exam twice, in June and September 2005, and then passed on his third attempt in May 2006.  He began his third year of medical school in July 2006.

Students are also required to pass "shelf" examinations, or standardized examinations given by the National Board of Medical Examiners ("NBME"), at the conclusion of each "clerkship," or

_____

[2]    For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff.  Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C. Cir. 2008); Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).  Therefore, the facts set forth herein are taken from the Complaint unless otherwise noted.

course of study, during their third year in order to successfully complete that year. See Compl. ¶¶ 24-26; Def's Mot. at 4; University Policies at 34. During his third year, Mesumbe failed shelf examinations for Surgery and Ob/Gyn, although he passed his other exams. The University Policies "state that a student who fails two or more clerkships will either be dismissed from the College of Medicine or repeat the academic year." Compl. ¶ 26. Because he failed two exams, Plaintiff met with Defendant Hassan, the Associate Dean of Academic Affairs, in May 2007. At that meeting, Plaintiff signed a "decision" stating that he must repeat his third year. Id. at ¶ 22.

Plaintiff met again with Dean Hassan to inform him that he would be appealing the decision. Id. The Complaint does not make clear whether Plaintiff decided not to pursue the appeal, or whether an appeal was taken and denied, but ultimately Dean Hassan and Howard issued an official letter on July 13, 2007, requiring him to repeat the third year, and to obtain an evaluation for a learning disability. Mesumbe was diagnosed with Attention Deficit Disorder and anxiety disorder, and began receiving treatment for both in July 2007. He also began to repeat his third year around the same time.

Plaintiff alleges that, in contrast to the decisions made concerning his academic career, another Howard student was allowed to take the Internal Medicine shelf examination three times, in violation of the University Policies, which require a student who fails a shelf exam twice to repeat the clerkship for that subject. However, Plaintiff was not required to repeat his clerkships. He also alleges that another student failed the Pediatrics and Psychiatry shelf examinations, but was promoted to his fourth year, in violation of the University Policies.

## 2. Plaintiff's USMLE Step 2 Exams

Howard students are also required to take and pass the USMLE Step 2 examinations in Clinical Knowledge and Clinical Skills in order to graduate. University Policies at 39-40. Students must pass each test in three or fewer attempts. Id. Plaintiff took the USMLE Step 2 Clinical Knowledge exam twice, passing it on his second attempt on August 25, 2008. Howard then issued a letter, dated October 22, 2008, stating that the Committee on Promotions, Graduation, and Awards had approved Mesumbe for promotion to his final year of medical school.

Plaintiff, however, still needed to pass his USMLE Step 2 Clinical Skills exam. He took the exam and failed it twice, on February 13 and September 17, 2008. He applied to the NBME to take the exam a third time. NBME verified Plaintiff's eligibility to sit for the exam a third time with Howard and Dean Hassan, and

-4-

decided that Mesumbe was eligible to re-take the exam between December 5, 2008, and December 5, 2009.

Mesumbe maintains that he felt pressured to take the exam as quickly as possible, in light of emails to all students from Dean Hassan urging them to do so if they planned to graduate in May 2009. Plaintiff took the Clinical Skills exam for the third time on January 26, 2009, and did not pass it.

Under Howard policy, students who fail the Clinical Skills exam twice must satisfactorily complete a review program before taking the exam a third time. Compl. ¶ 38; University Policies at 40. Students must also obtain written approval from Dean Hassan to enroll in the review program. If students fail the exam a third time, they will be dismissed from Howard. Plaintiff, however, did not enroll in the review program, and claims that he was, in fact, unaware that he was required to take it.

Following his third unsuccessful attempt at the Clinical Skills exam, Plaintiff met with Dean Hassan again, on January 28, 2009. At that meeting, Dean Hassan asked about the test, and asked Plaintiff whether he had taken a review program. Plaintiff met again with Dean Hassan on April 8, 2009, to request assistance before re-taking the Clinical Skills exam for a fourth time. At this meeting, however, Dean Hassan informed Plaintiff that he would be dismissed from the School, and that this was the first time the dismissal policy would be applied, as no student had ever failed

the Clinical Skills exam three times.  Plaintiff alleges in the Complaint that no student has ever taken the exam a third time without the benefit of a review course.  Following the meeting, Mesumbe received a letter on April 17, 2009, stating that the Promotions and Graduation Committee had voted that he be dismissed under the University Policies because he failed the Clinical Skills exam three times.

Plaintiff appealed the decision.  Defendant Robert E. Taylor, Dean of the Howard University College of Medicine, referred the appeal to the Student Grievance Committee.  The Committee met on April 29, 2009, to review Plaintiff's appeal, and recommended that Plaintiff be allowed to take the Clinical Skills exam again.

At the Student Grievance Committee meeting, Plaintiff described a telephone conversation between Samson Sozi, another Howard medical student, and Defendant Irene Pandit, Director of Academic Support and administrative assistant to Dean Hassan.  The conversation allegedly concerned a letter Sozi had received from Dean Hassan reminding him that he was required to take a review course because he had failed the USMLE Step 2 Clinical Skills exam twice.  During their conversation, Sozi asked Pandit why a friend was not required to take the same review course.  Pandit allegedly "stated 'you mean Mesumbe.'"  Compl. ¶ 47.  She also allegedly explained that Plaintiff was not required to take the course because his first attempt at the exam did not count, as it was

taken during his third year. Mesumbe's third attempt would be considered his second attempt, for purposes of the review course requirement. At some point after this conversation was mentioned at the Student Grievance Committee meeting, Dean Hassan confirmed with Sozi that someone from his office had discussed another student's academic records with him.

The Student Grievance Committee decided to allow Plaintiff to take the exam a fourth time. Despite this decision, Dean Taylor wrote Plaintiff a letter on May 13, 2009, stating that he could not support the Committee's recommendation "because it contravenes an existing College of Medicine Policy." Compl. ¶ 51. He then denied Plaintiff's appeal. The letter also stated that Plaintiff should have known about Howard's policies regarding the exam.

As a result of Plaintiff's dismissal, he received an email message from the United States Army on June 25, 2009, revoking his orders from the Eisenhower Army Medical Center, where he was to begin his residency training, and placing him on involuntary leave of absence. He received another letter on June 25, 2009, confirming that he had been placed on an involuntary leave of absence from the Health Professions Scholarship Program, effective May 10, 2009.

### B.    Procedural Background

Plaintiff filed his Complaint on August 20, 2009. The Complaint contains three counts: discriminatory treatment in

violation of 42 U.S.C. § 1981 (Count I); breach of contract (Count II); and invasion of privacy (Count III).  Defendants filed a Motion to Dismiss on September 24, 2009, and the parties completed briefing on October 28, 2009.

## II. **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ][his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.  A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) (citing Twombly, 550 U.S. at 557).

Under the _Twombly_ standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." _Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc._, 525 F.3d 8, 17 (D.C. Cir. 2008)(internal quotation marks and citations omitted).

When deciding a 12(b)(6) Motion to Dismiss, the Court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." _E.E.O.C. v. St. Francis Xavier Parochial Sch._, 117 F.3d 621, 624 (D.C. Cir. 1997); _see_ _Stewart v. Nat'l Educ. Ass'n_, 471 F.3d 169, 173 (D.C. Cir. 2006).

## III. ANALYSIS

### A. Count I is Dismissed for Failure to State a Claim for Intentional Discrimination Under § 1981.

In Count I, Plaintiff asserts that Defendants discriminated against him in violation of § 1981, which provides equal protection to "[a]ll persons within the jurisdiction of the United States . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. Plaintiff argues that, as a person of West African ethnic background and race from the Republic of Cameroon, he is of a

different race, ethnicity, and national background than other similarly-situated students who "have not been dismissed by Howard or otherwise treated differently," and who "have been treated more favorably" by Howard, under its educational contract with its students. Compl. ¶¶ 57-58. He alleges that this disparate treatment occurred because (1) unlike other students, he was required to repeat his third year for failure to pass shelf exams, and (2) unlike other students, he was not personally notified of the requirement to enroll in a review course for the USMLE Step 2 Clinical Skills exam. See Compl. ¶¶ 25-26, 46.

"To state a claim for racial discrimination under Section 1981, a plaintiff must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." Mazloum v. Dist. of Columbia Metro. Police Dep't, 522 F. Supp. 2d 24, 37 (D.D.C. 2007)(quotations omitted). Defendants argue that Mesumbe has failed to allege the second element of a § 1981 claim. Section 1981 "can be violated only by purposeful discrimination." Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982). To plead intentional discrimination, "plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that race was the reason for

defendant's actions." <u>Bray v. RHT, Inc.</u>, 748 F. Supp. 3, 5 (D.D.C. 1990); <u>see also</u> <u>Alexander v. Wash. Gas Light Co.</u>, 481 F. Supp. 2d 16, 31 (D.D.C. 2006) (quoting <u>Bray</u>). In <u>Alexander</u>, the court dismissed a § 1981 claim for failure to plead intentional discrimination, where plaintiff only stated that he was African-American, with no allegation of racial motivation. 481 F. Supp. 2d at 31.

Similarly in this case, nothing alleged in Mesumbe's complaint demonstrates a racially discriminatory motive. He makes a conclusory allegation that similarly situated students of different national origin, ethnicity, and race have been treated differently and more favorably, but Plaintiff nowhere alleges that this disparate treatment was racially motivated. Without some allegation indicating the intent behind these disparate outcomes, Plaintiff cannot state a claim for intentional discrimination. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

Furthermore, none of the supporting facts Plaintiff includes in the Complaint suggest a racially discriminatory motive. In fact, Mesumbe does not even indicate the race, ethnicity, or national origin of the students who allegedly received preferential treatment. Compl. ¶¶ 25-26, 46. Giving Plaintiff the benefit of all reasonable inferences, the facts alleged do not state a

racially discriminatory motive.  See <u>Aktieselskabet</u>, 525 F.3d at 17.  Therefore, Plaintiff has failed to state a claim for discrimination under § 1981.

## B.   The Court Lacks Original Jurisdiction Over Counts II and III and Declines to Extend Supplemental Jurisdiction.

In light of the reasoning above, no federal claims remain in this case since Counts II and III arise under the common law of the District of Columbia.  Plaintiff cannot establish diversity jurisdiction under 28 U.S.C. § 1332.  He does not plead the citizenship of the individual Defendants, as is his burden.  <u>See Dist. of Columbia ex rel. Amer. Combustion, Inc. v.  Transamerica Ins. Co.</u>, 797 F.2d 1041, 1043-44 (D.C. Cir. 1986).  In fact, Mesumbe is not diverse from all Defendants, as he and Defendants Pandit, Dean Hassan, and Dean Taylor are all citizens of Maryland. Defs.' Mot. to Dismiss  ("Defs.' Mot.") at 4, Ex. A (Taylor Decl.) ¶ 3, Ex. B (Hassan Decl.) ¶ 3, Ex. C (Pandit Decl.) ¶ 3 [Dkt. No. 5-3]; <u>Eze v. Yellow Cab Co.</u>, 782 F.2d 1064, 1065 (D.C. Cir. 1986) (noting that 28 U.S.C. § 1332 requires complete diversity).

The  only  available  basis  for  federal  subject  matter jurisdiction over Counts II and III, then, is pendent jurisdiction, pursuant to 28 U.S.C. § 1367.  "Section 1367(c), however, gives federal courts discretion to dismiss remaining state-law claims after dismissing all claims that formed the basis for original jurisdiction." <u>Walker v. Seldman</u>, 471 F. Supp. 2d 106, 114 (D.D.C. 2007).  "[I]n the usual case in which all federal-law claims are

-12-

dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting Carnegie-Mellon). The remaining contract and invasion of privacy claims are local law issues, appropriate for local courts to decide. See Walker, 471 F. Supp. 2d at 114. Additionally, Plaintiff will suffer very little delay if he chooses to re-file in Superior Court because this case was first filed less than one year ago. Neither would he suffer logistical inconvenience, such as being required to travel. Taking these factors into consideration, the Court declines to extend pendant jurisdiction to Mesumbe's remaining claims.

> **1. Plaintiff's Motion for Leave to Amend the Complaint to Create Diversity Jurisdiction Is Denied Because of Its Futility.**

In his Opposition, Plaintiff requests leave to amend the Complaint to remove the individually named Defendants if his federal claim is dismissed. Pl.'s Opp'n at 3 n.1. Removing the individual Defendants, who are all Maryland residents, would create complete diversity between the Plaintiff and the remaining Defendant.

-13-

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) [or] (e)." Fed. R. Civ. P. 15(a)(1). Thereafter, a party must obtain leave from the court or written consent from the adverse party. Fed. R. Civ. P. 15(a)(2).

In this case, the Amended Complaint would be filed more than 21 days after service of Defendants' Motion to Dismiss, which was filed September 24, 2009. In such a scenario, the district court has discretion to grant or deny leave. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). When a party requests leave from the court, it "'shall be freely given when justice so requires' . . .[i]n the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962)(quoting Fed. R. Civ. P. 15(a)).

Amendments may be denied as futile "if the proposed claim would not survive a motion to dismiss." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996). For reasons stated below, neither of Plaintiff's remaining Counts (II and III) survive the Motion to Dismiss. Removing the individual Defendants as Plaintiff requests to do in a proposed Motion to Amend the Complaint, would not change this outcome for either Count.

Therefore, Plaintiff's Motion for Leave to Amend the Complaint is denied.[3]

### a. Count II Fails to State a Breach of Contract Claim.

In Count II, Plaintiff asserts that he had a contractual relationship with Defendants, based on his payment of tuition and fees, and the school's grant of "all of the privileges and rights of being a student at Howard University." Compl. ¶ 61. Plaintiff further asserts that Defendants breached this contract by "not allowing him to sit for the USMLE Step 2 Clinical Skills examination after successful completion of a review program, as required by the [University Policies]." Compl. ¶ 64.

To state a breach of contract claim, plaintiff must allege the following elements: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009).

---

[3]     Defendants challenge Plaintiff's request on the basis that he failed to amend within the appropriate time. Defs.' Reply at 4. Although the proposed Motion for Leave to File would be filed later than the 21-day window for amendments as of right, it would be filed only a few months into the case and would seek only to "make technical corrections" to the basis for federal jurisdiction. Harrison v. Rubin, 174 F.3d 249, 253 (D.C. Cir. 1999). Such delay is not prejudicial to Defendants, and amendments may be granted as a matter of the Court's discretion. See id. Nevertheless, Plaintiff's Motion, if filed, would be denied as futile, as explained above.

The contract between the parties is defined by the University Policies, which outline the relationship between students and the school.[4]  See Compl. ¶ 64 (citing a violation of the "Howard University rules and procedures").  Defendants do not deny that a contractual relationship existed between Howard and Plaintiff.[5] Defendants do argue that Plaintiff has failed to allege sufficient facts to plead a breach of that contract.  Defs.' Mot. at 15.

Plaintiff advances several arguments that Defendants violated the contract, but none successfully state a breach.  In the Complaint, he argues that Defendants breached the contract by "not allowing him to sit for the USMLE Step 2 Clinical Skills examination after successful completion of a review program, as required by the [University Policies]."  Compl. ¶ 64.  The Policies, however, state only that "[s]tudents must pass the USMLE Step 2 [Clinical Skills] in order to graduate," and that

_____

[4]     Although the Policies were attached to Defendants' Reply, the Court may consider their terms because Plaintiff refers to them and quotes parts of them in the Complaint.  Stewart, 471 F.3d at 173 ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice").

[5]     Defendants do deny that a contractual relationship exists between Plaintiff and any of the individually named Defendants. Defs.' Mot. at 17.  This argument does not affect the analysis of the contract itself, however, and because Count II is analyzed in light of the proposed Amended Complaint removing the individual Defendants. Plaintiff's contractual relationship with Defendant Howard is the only one that requires consideration.

-16-

> [a]ny student who does not pass the USMLE Step
> 2 [Clinical Skills] on the second attempt must
> satisfactorily complete a program of review
> before sitting for the examination for the
> third time. The student must obtain written
> approval from the Associate Dean for academic
> Affairs prior to enrolling in the review
> program. Students who are required to take
> the examination for the third time must have a
> passing grade reported by March 15 of the year
> following the one in which they were scheduled
> to graduate. <u>Failure on the third attempt
> will result in dismissal from the College of
> Medicine</u>.

University Policies at 40 (emphasis in original). Nothing in this passage indicates that Defendants must permit a student to sit for the exam so long as he successfully completes the review course. At most, this passage provides a student the right to sit for the exam a third time, after satisfying the review course requirement. Mesumbe failed to satisfy this threshold requirement since he never took, no less successfully completed, the review course. Comp. ¶ 48, Defs.' Mot. at 15. In addition, he had already taken, and failed, the exam three times. <u>Id.</u> at ¶ 39. Because Defendants are under no obligation to permit students to sit for the exam an unlimited number of times, they did not breach the contract by refusing to permit him to sit for the exam a fourth time.

Plaintiff next argues in his Opposition that the University Policies require Defendants to provide students with a review course. Pl's Opp'n at 3-4. However, nothing in the above-quoted passage--or elsewhere in the Policies--obligates Defendants to

provide the review course when a student fails to request enrollment in it.  Plaintiff never made such a request.

Alternatively, Plaintiff argues that Defendants breached the contract by failing to notify him of the review course requirement. Pl.'s Opp'n at 4-5.  He asserts that, regardless of the written terms of the contract, failure to notify was a breach of Defendants' "unwritten policy." Id. at 5.  However, the University Policies state that

> While students may be reminded of the policies and procedures by the Dean or his/her designees from time to time, each student shall be bound by the policies even if the student is not reminded of the policies by the Dean or his/her designee.

University Policies at 1.  The terms of the contract expressly disclaim any obligation on Defendants' part to notify students of applicable "policies and procedures," which includes enrollment in the review course.  Id.  Thus, Defendants' failure to notify Mesumbe, even when some other students may have been notified, does not create an "unwritten policy."  Their actions were consistent with the terms of the contract, and do not constitute a breach.

Plaintiff further argues that the provision outlining the procedure for enrolling in the review program is ambiguous, and should thus be construed in his favor. Id. at 5.  However, "[a]mbiguities exist only if the term is 'reasonably susceptible of different constructions or interpretations,'" and "[i]t is not enough that the parties disagree about the term's meaning."

Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc., 205 F.R.D. 1, 12
(D.D.C. 2000) (applying District of Columbia law) (citations and
quotations omitted).  Plaintiff reads this provision as obligating
Defendants to ensure that students enroll in the review program,
Pl.'s Opp'n at 5, but the University Policies, which state that
students "must satisfactorily complete a program of review" and
"must obtain written approval . . . prior to enrolling," clearly
place that obligation on the students themselves.  University
Policies at 40.  The fact that students "must obtain approval from
the Dean for Academic Affairs prior to enrolling," id., makes that
perfectly clear.[6]

Furthermore, "[i]t is a fundamental tenet of contract
interpretation that a contract provision should be interpreted,
where possible, as consistent with the contract as a whole."  BWX
Electronics, Inc. v. Control Data Corp., 929 F.2d 707, 711 (D.C.
Cir. 1991)(citing District of Columbia cases).  When the USMLE Step
2 Clinical Skills provision is read in light of the provision
mandating that "each student shall be bound by the policies even if
the student is not reminded" of them, its meaning becomes even more
clear.  University Policies at 1.  Students alone bear the
responsibility to enroll in the review course.

_____

[6]     Plaintiff concedes in his Complaint that every other
student who ever took the USMLE Step 2 Clinical Skills examination
a third time had first taken the required review program.  Compl.
¶ 43.

In sum, giving Plaintiff the benefit of all reasonable inferences, the Complaint fails to state a breach of contract claim because Plaintiff cannot demonstrate that there was a breach of the contract. See Saha v. George Wash. Univ., 577 F. Supp. 2d 439, 444 (D.D.C. 2008); Aktieselskabet, 525 F.3d at 17. Therefore, Count II would not survive the Motion to Dismiss.

> **b.    Count III Is Conceded for Failure to Respond to Defendants' Arguments; Alternatively, Plaintiff Fails to State a Claim for Invasion of Privacy.**

In Count III, Plaintiff alleges that Defendants committed invasion of privacy, or "the public disclosure of private facts," when Defendant Pandit disclosed his academic information to another student. Compl. ¶¶ 68-69.

To state an invasion of privacy claim, Plaintiff must allege "publicity [given] to a matter concerning [his] private life . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D.[7]

Defendants challenge Count III in the Motion to Dismiss, arguing that Plaintiff failed to state a claim because he had not sufficiently alleged the "publicity" element of the tort, which requires dissemination of private facts to the "public at large,"

---

[7]    The District of Columbia Courts have adopted the Second Restatement of Torts' definition of invasion of privacy. Vassiliades v. Garfinckel's, Brooks Brothers, Miller & Rhoades, Inc., 492 A.2d 580, 587 (D.C. 1985).

and not merely "a single person or even . . . a small group of persons." Defs.' Mot. at 18 (quoting Restatement (Second) of Torts § 652D, cmt. a (1977)). Plaintiff did not address Defendants' arguments against Count III in his Opposition.

"When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." Fox v. Am. Airlines, Inc., Civ. No. 02-2069, 2003 WL 21854800 at *2, aff'd, Fox v. Am. Airlines, Inc., 389 F.3d 1291 (D.C. Cir. 2004). Thus, Plaintiff's invasion of privacy claim is deemed conceded.

On the merits, Defendants are correct that Plaintiff failed to plead that his claim was publicized in a manner that would permit recovery. He alleges that Defendant Pandit disclosed his academic records to one person, Sozi. Compl. ¶ 47. Publication to a single person, as already noted, does not constitute invasion of privacy under District of Columbia law. Restatement (Second) of Torts § 652D cmt. a; see Steinbuch v. Cutler, 463 F. Supp. 2d 1, 5 (D.D.C. 2006) (discussing state law and the Restatement (Second) of Torts). Thus, Count III would not survive a Motion to Dismiss, even if not conceded.

Because neither Count II or Count III would survive the Motion to Dismiss, the Court denies Plaintiff's Motion for Leave to Amend the Complaint. See Ludwig, 82 F.3d at 1099. Amendment would be futile because removing the individual Defendants would not save

either Count. Because the parties are not completely diverse, and the federal claim in Count I has been dismissed, the only basis for jurisdiction over Counts II and III is pendent jurisdiction under § 1367. Taking into consideration factors including judicial economy, convenience, fairness, and comity, the Court declines to allow the state law claims in Counts II and III to proceed. <u>See</u> <u>Shekoyan</u>, 409 F.3d at 424.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **granted.** An Order will issue with this opinion.


April 19, 2010                          _____/s/_____
                                        Gladys Kessler
                                        United States District Judge


**Copies to:** counsel of record via ECF